TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Bart L. Kessel SBN 125080
bart.kessel@tuckerellis.com
Charlotte Godart SBN 366358
charlotte.godart@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorneys for Plaintiffs
COACHELLA MUSIC FESTIVAL, LLC and
GOLDENVOICE, LLC

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC and GOLDENVOICE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., and WAL-MART.COM USA, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br>**1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;**<br>**2) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125;**<br>**3) VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 & 17500; AND**<br>**DEMAND FOR TRIAL BY JURY** |

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

Plaintiffs Coachella Music Festival, LLC and Goldenvoice, LLC (collectively, "Plaintiffs"), by and through their attorneys Tucker Ellis LLP, file their complaint against Defendants for injunctive relief and damages as follows, with Plaintiffs alleging upon actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

## INTRODUCTION

1. Held annually,[1] Plaintiffs' Coachella Valley Music and Arts Festival ("Coachella" or the "Festival") is one of the most critically acclaimed music and art festivals in the world, with multiple bands, artists, food vendors, and stages. Coachella is a multi-day event that attracts hundreds of thousands of attendees to Southern California each April.

2. Plaintiffs offer a wide range of Coachella-branded goods and services, including hotel rooms, travel and transportation packages, water bottles, mugs, posters, t-shirts, tank tops, hoodies, tote bags, and other merchandise that is sold and advertised at Coachella, on the Coachella website, through the Coachella app, and on social media. Plaintiffs also offer a variety of related services in connection with Coachella, and enter into sponsorships and license the use of their marks to carefully selected companies, including for apparel, health and beauty products, food and beverage products, and more.

3. Plaintiffs own trademark and service mark rights in the COACHELLA, COACHELLA (stylized), COACHELLA VALLEY MUSIC AND ARTS FESTIVAL, CHELLA, and the Coachella Palm logo, trademarks and service marks, which they use in connection with Coachella, related music and arts events, and related goods, including apparel and other merchandise, and related services.

4. Plaintiffs also own a distinctive trade dress which they use in connection with Coachella, and its related goods and services, including ticketing, water bottles, apparel

[1] Coachella was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a YouTube Original documentary, "Coachella: 20 Years in the Desert" debuted online on April 10, 2020 and has been viewed over 6,793,000 times. Coachella returned in person in 2022.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

and other merchandise, and related services (the "Coachella Trade Dress"). The Coachella Trade Dress is comprised of various combinations of the following elements, including: a Ferris wheel, silhouettes or images of palm trees, images of the mountains surrounding the Coachella Valley, grass, and a gradient background, examples of which are as shown below:







5. The COACHELLA, COACHELLA (stylized), COACHELLA VALLEY MUSIC AND ARTS FESTIVAL, CHELLA, Coachella Palm logo, and the Coachella Trade Dress are collectively referred to as "the Coachella Marks."

6. Through Plaintiffs' long-standing and continuous use of the Coachella Marks, Plaintiffs' advertising and extensive media coverage, the Coachella Marks have become closely associated in the minds of the public with Plaintiffs and the Festival.

7. Defendants Walmart, Inc. and Wal-Mart.com USA, LLC (collectively "Walmart") comprise the largest retailer in the world, with global revenues reaching approximately $692 Billion in 2025. Their U.S. retail sales were $576 Billion and Walmart holds a 9.83% share of the United States retail market. Online, Walmart is the second-largest U.S. e-commerce retailer, with revenue of $197.3 Billion in 2025.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

8. Despite having no association with Plaintiffs or Coachella, Walmart has intentionally sold, and allowed others to sell, directly competitive goods bearing the Coachella Marks and has used, and allowed others to use, without authorization, the Coachella Marks in advertising for these goods via Walmart's stores, both physical and online. As such, Walmart has intentionally created a likelihood of confusion and false association between Walmart's stores, website, and various goods it sells, on the one hand, and the Festival and Plaintiffs' goods, on the other hand. Several examples of Walmart's infringing use of the Coachella Marks are depicted below.










9. During the past several years, Plaintiffs have made repeated requests and demands for Walmart to cease selling and advertising infringing goods (both online and in its stores), and to remove or alter its advertising, signage, products, and promotional materials. Plaintiffs' requests have been of minimal benefit; Walmart typically stops for a period of time, but then resumes its infringing conduct. As a result, Plaintiffs have no choice but to bring this lawsuit against Defendants.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

## THE PARTIES

10. Plaintiff Coachella Music Festival, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

11. Plaintiff Goldenvoice, LLC is a limited liability company organized and existing under the laws of the State of California, having a principal place of business in Los Angeles, California. Goldenvoice, LLC produces the Coachella Valley Music and Arts Festival.

12. Upon information and belief, Defendant Walmart, Inc. is a Delaware corporation, having its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.

13. Plaintiffs are informed and believe that Defendant Wal-Mart.com USA, LLC ("Wal-Mart.com") is a California limited liability company. Wal-Mart.com has disclosed to the Secretary of State of California that its principal office is located at 702 S.W. 8th St., Bentonville, Arkansas 72716. Wal-Mart.com has also disclosed to the Secretary of State of California that it has a California office located at 850 Cherry Ave., San Bruno, CA 94066.

14. Upon information and belief, Walmart, Inc. and/or Wal-Mart.com own, operate, and/or control the Walmart website available at www.walmart.com (the "Walmart Website").

15. Upon information and belief, Walmart, Inc. owns and operates a retail store located at 82491 Ave 42, Indio, CA 92203 ("North Indio Walmart").

16. Upon information and belief, Walmart, Inc. owns and operates a retail store located at 79295 CA-111, La Quinta, California 92253 ("La Quinta Walmart").

## JURISDICTION AND VENUE

17. This case is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125 *et seq.*, and California statutory and common law.

18. This Court has subject matter jurisdiction over the federal claims in this Complaint pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 1338(a)-(b) (any act of Congress

relating to trademarks or unfair competition with substantial and related claim under trademark laws).

19. This Court has supplemental jurisdiction over the claims arising under California law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the asserted state-law claims are substantially related to the claims arising under the Lanham Act such that they form part of the same case or controversy.

20. This Court has personal jurisdiction over Defendants because (1) Defendants conduct business within California and this judicial district; (2) the causes of action asserted in this Complaint arise out of Defendants' contacts with California and this judicial district; (3) Defendants have caused tortious injury to Plaintiffs in California and in this judicial district; and (4) Defendants have undertaken acts of trademark and service mark infringement, false designation of origin, and unfair competition that were directed at California with knowledge that the brunt of injury would be felt by Plaintiffs in California.

21. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

**PLAINTIFFS' COACHELLA FESTIVAL, TRADEMARKS, SERVICE MARKS AND TRADE DRESS**

22. Plaintiffs own the intellectual property for Coachella, one of the country's premier music and arts festivals. Printouts of several news stories about Coachella are attached to this Complaint as **Exhibit 1**. The first line in one article from Harper's Bazaar detailing the 2025 Festival reads, "When it comes to music festivals, it doesn't get bigger than Coachella." *Id*.

23. Held annually at the Empire Polo Club in Southern California, Coachella is one of the most critically acclaimed music festivals in the world. The entire festival site, which includes the festival grounds, on-site camping, parking and support operations, encompasses over 800 acres.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

24. Coachella was first held in October 1999 and drew some 25,000 attendees into the California desert near Palm Springs. Over the years,[2] both Coachella's attendance and its prominence have grown. Attendance at Coachella, aggregated over the multi-day event, now totals nearly 750,000 attendees per year.

25. Coachella showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world. Coachella attracts performances by unknown up and coming artists as well as some of the world's biggest musical performers, including: AC/DC, Bad Bunny, Beyoncé, Beastie Boys, Björk, BLACKPINK, Cardi B, Daft Punk, Doja Cat, Dr. Dre & Snoop Dogg, Guns N' Roses, Harry Styles, Jay-Z, Justin Bieber, Lady Gaga, Lana Del Rey, Madonna, Missy Elliott, Paul McCartney, Prince, Radiohead, Red Hot Chili Peppers, Sabrina Carpenter, The Cure, and The Weeknd, to list just a few.

26. Coachella is about more than just music. Coachella has camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), on-site lodges, hotel packages, and an amazing selection of food and beverages from a wide range of restaurants. Coachella also features extensive art exhibits, including sculptures and interactive and immersive art. The music, the food, the art, and of course, the fellowship of other attendees, taken together, make Coachella more than just a concert to attend—it truly is an experience.

27. Coachella is widely recognized as, and has developed a reputation as, a trend-setting event, attracting sponsorships from recognized and esteemed brands such as Absolut, American Express, Coca-Cola, Google Pixel, Heineken, Neutrogena, YouTube, and more.

28. Plaintiffs are very selective in granting sponsorships and licensing of the Coachella Marks. Coachella sponsorships and licenses have tremendous value due to the exposure they garner.

---

[2] Coachella was next held in April 2001 and has been held annually thereafter, except in 2020 and 2021, when the Festival was postponed due to the COVID-19 pandemic.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

29. Plaintiffs closely monitor and control all use of the Coachella Marks by sponsors and licensees.

30. Plaintiffs own and operate Coachella's website, available at www.coachella.com. This website receives millions of page visits each year. Screen captures of Plaintiffs' website, available at www.coachella.com, are attached to this Complaint as **Exhibit 2**.

31. Plaintiffs also produce a mobile app for Coachella for use on iOS and Android devices. Screen captures of Plaintiffs' app from iTunes and Google are attached to this Complaint as **Exhibit 3**.

32. Plaintiffs extensively promote Coachella through a variety of media, including via the Internet on their website, available at www.coachella.com, and on numerous social media sites including YouTube, Facebook, X, Instagram, and TikTok. Screen captures of Coachella's YouTube, Facebook, X, Instagram, and TikTok accounts are attached to this Complaint as **Exhibit 4**. As can be seen from Exhibit 4, Coachella's YouTube account has over 6.49 million subscribers; its Facebook account has over 3.4 million followers; its X account has over 1 million followers; its Instagram account has over 6.3 million followers; and its TikTok account has over 2.6 million followers.

33. Plaintiffs and their affiliates have invested substantial sums in media and related content to promote Coachella.

34. An internet search using the Google search engine for the word "Coachella" provides millions of responsive hits. A cursory review of the results shows nearly every hit in the first four pages of results was related to Plaintiffs' festival; and the first search result was to Plaintiffs' www.coachella.com website. *See* **Exhibit 4**.

35. Between April 8, 2026 and April 23, 2026, there were over 22 thousand articles published about the Festival with several million visits.

36. In 2026, over 400 credentialed journalists, from print media, radio, television, and the Internet reported live from Coachella. The journalists represented media outlets such as The New York Times, Vanity Fair, Billboard, and the Guardian, to list only a few.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

37. Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trademarks and service marks, having used the marks in connection with the Festival and related goods and services since the first Coachella in 1999. Relevant to this Complaint, Plaintiffs own U.S. Trademark Registration No. 4,270,482 for the mark COACHELLA, for, among other goods, "Hooded sweat shirts; Long-sleeved shirts; Scarves; Shirts; T-shirts; Tank tops" and "Bottles, sold empty; Plastic water bottles sold empty."

38. Similarly, Plaintiffs own the exclusive trademark and service mark rights to the distinctive COACHELLA (stylized) trademark and service mark, having used the mark in connection with the Festival and related goods and services since the first Festival in 1999. Relevant to this Complaint, Plaintiffs own U.S. Trademark Registration No. 4,266,400 for the mark COACHELLA (stylized) for, among other goods, "Hooded sweat shirts; Long-sleeved shirts; Scarves; Shirts; T-shirts; Tank tops." The stylized mark is depicted below:

COACHELLA

39. Plaintiffs also host a smaller festival, *Chella Celebrando La Comunidad* (also known as "Chella"), in between the two weekends of Coachella. Because the Chella event takes place between the two weekends of Coachella in the same area and is a complementary event to Coachella, often featuring some of the Coachella performers, consumers closely associate the CHELLA mark and any goods and services offered under the CHELLA mark with Plaintiffs.

40. Plaintiffs own exclusive trademark and service mark rights to their distinctive logo that incorporates a palm tree into the stylized "C" in their mark. The stylized mark (the "Coachella Palm Logo") is depicted below:

41. Plaintiffs own the Coachella Trade Dress associated with the Festival, which consists of various combinations of distinctive visual elements including: a Ferris wheel, silhouettes or images of palm trees, images of the mountains surrounding the Coachella Valley, grass, and a gradient background. Plaintiffs have consistently used these elements year after year in connection with the Festival, and extensively in advertisements, on posters, printed materials, on Plaintiffs' website, on social media, and in connection with rendering their services. The overall commercial impression created by various combinations of these elements is unique and distinctive to Coachella. The Coachella Trade Dress is nonfunctional. The various combinations of the elements described above are not essential to the use or purpose of any goods or services, nor do they affect their cost or quality.

42. Consumers closely associate the Coachella Trade Dress with Plaintiffs and the Festival. For example, the Ferris wheel at Coachella has been featured in countless third-party media coverage, including by ABC News. Searches for "Coachella Ferris wheel" on both Getty Images and Google Images result in thousands of images of the iconic Ferris wheel at Coachella, showing its extremely strong association with the Festival. In fact, The Los Angeles Times published an article in April 2026 entirely dedicated to the Coachella Ferris wheel titled "What it takes to build Coachella's most recognizable icon," further demonstrating the Ferris wheel's symbolic connection and association with the Festival. Images from this article and other exemplar third-party media outlets as well as screenshots of the search results from Getty Images and Google are attached collectively as **Exhibit 5**.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

The Ferris wheel is so associated with the Festival that Coachella's sponsors, including for example, Absolut Vodka, use it in sponsored advertisements for their products. See example screen captures of the Absolut Vodka Coachella advertisements displayed below.







43. Plaintiffs have used the Coachella Trade Dress on the line-up posters for the Festival since 1999, on advertising, on social media, on guidebooks Plaintiffs previously distributed for the Festival, and on their website, among other places. Exemplars of Plaintiffs' advertising, printed materials, and posters, and screen captures of Plaintiffs' website showing use of these elements of the Coachella Trade Dress are attached to this Complaint as **Exhibit 6**.

44. Plaintiffs' use of the Coachella Marks has been extensive, continuous, and substantially exclusive.

45. Coachella and the Coachella Marks have been the subject of extensive newspaper articles, magazine articles, television, and Internet news stories. *See* Exhibit 1.

46. Plaintiffs have made, and continue to make, a substantial investment of time, effort and expense in the production and promotion of Coachella and the Coachella Marks.

47. The Coachella Marks are unique and distinctive and, as such, designate a single source of origin.

48. As a result of Plaintiffs' efforts and use, the Coachella Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiffs and Coachella.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

49. Plaintiffs expend substantial effort and expense to protect the Coachella Marks' distinctiveness in the marketplace. Plaintiffs extensively police unauthorized use of the Coachella Marks and have sent countless cease and desist letters to combat misuse or unauthorized use of the Coachella Marks.

50. Plaintiffs have filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

51. Based on Plaintiffs' use, including the use described herein, Plaintiffs own extensive common law trademark rights in the Coachella Marks.

52. In addition to their extensive common law rights, Plaintiffs own numerous United States registrations and applications for the Coachella Marks. Specifically, Plaintiffs own:

a. Registration No. 3,196,119 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

b. Registration No. 4,270,482 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

c. Registration No. 3,196,129 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

d. Registration No. 4,266,400 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

e. Registration No. 5,235,905 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

f. Registration No. 5,235,903 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

g. Registration No. 3,196,128 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

h. Registration No. 3,965,563 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

i. Registration No. 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

j. Registration No. 5,075,233 for CHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

k. Registration No. 5,520,063 for CHELLA.

l. Registration No. 7,196,158 for the Coachella Palm Logo.

The registration certificates for each of these registrations are attached to this Complaint as **Exhibit 7**.

53. Having been widely promoted to the general public, extensively used in interstate commerce, and having exclusively identified Plaintiffs and their goods and services, the Coachella Marks symbolize the tremendous goodwill associated with Plaintiffs and Plaintiffs' Festival.

54. The Coachella Marks are a property right of incalculable value.

## WALMART IS A SERIAL INFRINGER, WITH INJUNCTIONS AND LAWSUITS AGAINST IT DATING BACK AT LEAST THIRTY YEARS

55. Walmart is the world's largest retailer. It is a multinational retail merchandise company with more than 4,600 United States locations that distributes a wide variety of products through its network of retail stores and through the Walmart Website. Approximately 90% of United States residents live within 10 miles of a Walmart store, and an even higher percentage have access to it via the internet.

56. On information and belief, public court filings from across the country show that Walmart has repeatedly been sued for intellectual property infringement for the last 30 years.

57. On information and belief, in 1998, Walmart paid $6.4 million to settle a lawsuit brought by Tommy Hilfiger alleging that Walmart sold counterfeit Hilfiger-brand T-shirts.

58. On information and belief, in 1999, Walmart settled for over $1 million with Nike to resolve claims that it sold counterfeit Nike goods.

59. In 2016, Yeti Coolers, LLC sued Walmart in the U.S. District Court for the Western District of Texas, alleging that Walmart sold products that infringed Yeti's intellectual property rights. That case settled in March 2017.

60. In December 2017, Yeti Coolers, LLC again sued Walmart in the U.S. District Court for the Western District of Texas, asserting patent, trademark, trade dress, copyright, and related commercial claims, and alleging that Walmart had breached the March 2017 settlement.

61. On information and belief, between January 1, 2016 and December 22, 2017, Walmart was a defendant in 66 federal district court cases involving patent, trademark, or copyright claims.

62. In October 2018, in an action brought by Variety Stores, Inc., a jury in the U.S. District Court for the Eastern District of North Carolina found that Walmart had willfully infringed Variety's federally registered trademark by selling grills and grilling accessories bearing an infringing mark.

63. In June 2019, Roxana Russell and her company, Roxy Russell Design, sued Walmart for copyright infringement in the U.S. District Court for the Central District of California, alleging that Walmart's online store sold lamps that copied her copyrighted designs. A jury found Walmart liable for infringing the copyrights in three of Russell's sculptural works and two of her registered images, and the court entered judgment for Russell.

64. In July 2019, artist Julian Rivera sued Walmart for copyright infringement in the U.S. District Court for the Central District of California, alleging that Walmart sold products featuring his signature design.

65. In July 2021, Crocs sued Walmart for trademark infringement in the U.S. District Court for the District of Colorado, alleging that Walmart sold infringing versions of Crocs shoes.

66. In November 2021, Vans sued Walmart for trademark and trade dress infringement and related unfair competition in the U.S. District Court for the Central District of California, alleging that Walmart sold infringing versions of Vans shoes.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

67. In January 2023, Deckers, which owns the Hoka, Teva, and Ugg brands, sued Walmart for trademark and trade dress infringement and unfair competition in the U.S. District Court for the Central District of California.

68. Walmart typically responds to these infringement complaints with a statement such as:

> "We respect intellectual property rights and take these allegations seriously. We will review the complaint once we have been served with it and will respond as appropriate with the court."

**<u>WALMART'S INFRINGEMENT OF THE COACHELLA MARKS</u>**

69. As alleged further below, Walmart has sold goods that bear one or more of Plaintiffs' Coachella Marks and used one or more of the Coachella Marks in connection with the sale, advertising and promotion of goods on multiple occasions over the past ten years, without a valid license or permission from Plaintiffs.

70. Many of these goods that bear one or more of Plaintiffs' Coachella Marks directly compete with Plaintiffs' own authentic goods.

71. Walmart's unauthorized use of the Coachella Marks creates a likelihood of confusion and a false association between Walmart and Coachella. *See* examples of Walmart's infringing use below.






72. In June 2017, Walmart advertised at least twenty-eight (28) apparel items that displayed the COACHELLA mark (including use of the stylized COACHELLA mark). A screenshot of one of the listings of the infringing products on the Walmart Website is below:




73. After learning of Walmart's infringing conduct, Plaintiffs contacted Walmart and notified it of Plaintiffs' federal trademark registrations and exclusive rights and demanded that Walmart stop selling products displaying the Coachella Marks and stop all use of the Coachella Marks.

74. After initially resisting Plaintiffs' takedown efforts, Walmart eventually removed the infringing products from the Walmart Website. It also provided Plaintiffs with the contact information for the third parties that had manufactured the infringing products.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

75. In April 2019, disregarding Plaintiffs' prior notice regarding Plaintiffs' exclusive rights, Walmart began selling infringing apparel bearing the Coachella Marks in the North Indio Walmart.[3] Representative photographs of the infringing apparel are below:








76. Upon learning of Walmart's infringing conduct, Plaintiffs again contacted Walmart and demanded that it cease selling products displaying the Coachella Marks. Again, after initially resisting Plaintiffs' demand that it cease and desist, Walmart removed the infringing products from the North Indio Walmart.

77. Coachella did not take place in 2020 or 2021, due to the COVID-19 health restrictions. However, when Coachella resumed in April 2022, so did Walmart's unlawful conduct. In direct violation of the Festival Ticket Terms[4], Walmart engaged in unauthorized commercial promotions by using photographs taken on the festival grounds (and which contained the image of the iconic Coachella Ferris wheel), to advertise Walmart's "Dr. Thunder" carbonated soft drink, which is a generic version of Dr. Pepper

---

[3] As previously discussed, Plaintiffs are the owners of U.S. Trademark Registration No. 4,270,482 for the mark COACHELLA and U.S. Trademark Registration No. 4,266,400 for the mark COACHELLA (stylized), covering, among other goods, "Hooded sweat shirts; Long-sleeved shirts; Scarves; Shirts; T-shirts; Tank tops."

[4] Plaintiffs own the copyright to all images and video recordings made at Coachella per the terms of the Festival's passes (the "Festival Ticket Terms"), which are accepted by any person attending Coachella or accessing the Coachella grounds (see https://www.aegpresents.com/festival-ticket-terms/). By using an image taken on the Coachella grounds, Walmart has either breached this contract with Plaintiffs or induced another to breach its contract with Plaintiffs.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

sold exclusively by Walmart. A screen capture of Walmart's Dr. Thunder promotion with the iconic Coachella Ferris wheel in the background is shown below:




78. In April 2023, Walmart's infringing conduct continued as the La Quinta Walmart used unauthorized advertising signage that incorporated the Coachella Marks (including the COACHELLA (stylized) mark and the Coachella Trade Dress) that was copied directly from Plaintiffs' line-up posters from prior festivals. Walmart prominently displayed the advertising signage in connection with the sale of items commonly purchased by festival attendees, including beverage coolers and folding chairs. Representative photographs of Walmart's infringing in-store signage and the line-up posters from which Plaintiffs' marks were copied are below:[5]

[5] The images also display the signage and line-up from the Stagecoach Music Festival. The Stagecoach Music Festival is a premier country music festival owned and produced by a subsidiary of Plaintiffs' parent company. It takes place the weekend immediately following Coachella, on the same grounds. As such, it is closely associated with Coachella.



TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400










79. Plaintiffs contacted Walmart's General Counsel and provided another cease-and-desist letter, resulting in removal of the infringing signage from the La Quinta Walmart.

80. In April 2026, undeterred by knowledge at the highest corporate levels that its sale of unlicensed goods bearing the Coachella Marks is wrongful, Walmart again disregarded Plaintiffs' rights and resumed offering the sale of products at the La Quinta Walmart that displayed the Coachella Marks without Plaintiffs' approval, license, or authorization. These apparel items displayed several elements of the Coachella Trade Dress, including the Ferris wheel. Walmart even used a point-of-sale Ferris wheel sign produced by Festival sponsor Absolut Vodka to further cause confusion and create a false association by suggesting that the goods were authentic Coachella items and/or that Walmart was affiliated with Plaintiffs or the Festival. Photographs of the Absolut Vodka Ferris wheel sign and the unauthorized apparel are depicted below:

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400














81. Walmart's infringing conduct was so extensive and so prominent that the *Desert Sun*, a Palm Springs news outlet, posted several videos on Instagram showing tumblers, bottles, wine glasses, tank tops, and other merchandise bearing the Coachella Marks at the North Indio Walmart location, with the caption, "Who needs the merch tent [at Coachella] when you have the North Indio Walmart?"[6] Screen captures of the *Desert Sun* Instagram videos are below:

---

[6] As discussed above, Plaintiffs own the rights to the Coachella Marks for a wide range of goods and services associated with the Festival. Relevant here, Plaintiffs are the owners of U.S. Trademark Registration No. 4,270,482 for the mark COACHELLA, covering, among other goods, "Bottles, sold empty; Plastic water bottles sold empty." As shown in the images above, Walmart was selling water bottles with the Coachella Marks and the Coachella Trade Dress, including the Ferris wheel.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400







82. As described above, despite having notice of Plaintiffs' intellectual property rights since at least 2017, Walmart has continued to use the Coachella Marks on in-store signage and has sold and offered for sale items of apparel and other goods that bear the Coachella Marks.

83. Walmart's most recent conduct is part of this years-long pattern of using the Coachella Marks to sell directly competitive goods, including infringing goods, and to improperly associate itself with the Festival and trade off the goodwill of the Coachella Marks.

84. Walmart has continued this conduct despite repeatedly receiving notice of Plaintiffs' rights and despite repeated demands to remove infringing products, signage, and promotional materials. As noted above, Plaintiffs have been left with no option but to bring the present lawsuit and seek the Court's assistance.

**HARM TO PLAINTIFFS AND THE GENERAL PUBLIC**

85. A primary purpose of a trademark is to help consumers identify the source of goods or services. In contrast, Walmart's unauthorized and infringing use of the Coachella Marks creates a likelihood of confusion as to source, sponsorship, affiliation, and/or endorsement of Walmart and its goods and services with Plaintiffs. This use also creates a

false association between Walmart and Plaintiffs, despite the fact that no such relationship exists.

86. Walmart's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Coachella Marks, particularly the goodwill and reputation associated therewith.

87. Walmart's activities have also irreparably harmed, and if not enjoined, will continue to irreparably harm Plaintiffs' ability to procure sponsors and licensees, via tortious interference with Plaintiffs' present and prospective contractual relationships, according to proof to be shown at trial.

88. Walmart's activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CAUSE OF ACTION

### (Trademark Infringement Under 15 U.S.C. § 1114)

89. Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

90. Walmart's use of the Coachella Marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Walmart's goods or services are produced by, authorized by, sponsored by, approved by, or affiliated with Plaintiffs.

91. The above-described acts of Walmart constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Plaintiffs to relief.

92. Walmart has unfairly profited from the trademark infringement alleged, and Plaintiffs are entitled to a disgorgement of Walmart's profits (if any), and any damages sustained by Plaintiffs, pursuant to 15 U.S.C. § 1117.

93. By reason of Walmart's acts of trademark infringement, Plaintiffs have suffered damage to the goodwill associated with the Coachella Marks, in amounts to be determined.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

94. Walmart's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks.

95. Walmart's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

96. By reason of Walmart's acts and continued recalcitrant behavior, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Walmart. Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Walmart and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

97. By reason of Walmart's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiffs are entitled to damages, and they are entitled to have those damages trebled under 15 U.S.C. § 1117.

98. This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))

99. Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

100. Walmart's use in commerce of the Coachella Marks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities with Plaintiffs.

101. The above-described acts of Walmart constitute trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

102. Walmart has unfairly profited from the trademark infringement alleged, and Plaintiffs are entitled to a disgorgement of Walmart's profits (if any), and any damages sustained by Plaintiffs, pursuant to 15 U.S.C. § 1117.

103. By reason of Walmart's acts of trademark infringement and false designation of origin, Plaintiffs have suffered damage to the goodwill associated with the Coachella Marks, in amounts to be determined.

104. Walmart's acts of trademark infringement and false designation of origin have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their Coachella Marks.

105. Walmart's acts of trademark infringement and false designation of origin have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

106. By reason of Walmart's acts and continued recalcitrant behavior, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Walmart. Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Walmart and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

107. The above-described acts of Walmart were willful and repeated.

108. By reason of Walmart's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiffs are entitled to damages, and they are entitled to have those damages trebled under 15 U.S.C. § 1117.

109. This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## **THIRD CAUSE OF ACTION**

### **(Unfair or Deceptive Acts or Practices in Violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 and California Common Law)**

110. Plaintiffs reallege and incorporate by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

111. Walmart is in direct competition with Plaintiffs.

112. Walmart's willful, knowing, and unauthorized promotion, advertisement, sale and offering for sale of infringing goods causing confusion as to the source of the goods and causing harm to Plaintiffs' goodwill is an unlawful appropriation of Plaintiffs' exclusive rights in the Coachella Marks.

113. Walmart's conduct as described herein constitutes unfair competition, including unfair or fraudulent business acts or practices and misleading advertising, in violation of California Business and Professions Code §§ 17200 and 17500, and under the common law of the State of California.

114. Pursuant to California Business and Professions Code § 17203, Walmart is required to disgorge and restore to Plaintiffs all profits and property acquired by means of Walmart's unfair competition with Plaintiffs.

115. Due to Walmart's conduct, Plaintiffs have suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Plaintiffs adequate relief at law for Walmart's acts and continuing acts. Plaintiffs' remedy at law is not adequate to compensate them for the injuries already inflicted and further threatened by Walmart. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203.

116. Because Walmart's conduct has been intentional and willful and in conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to exemplary or punitive damages under the statutory and common law of the State of California in an amount appropriate to punish Walmart and to make an example of it to the community.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request judgment against Walmart as follows:

1. That the Court enter a judgment against Walmart that it has:

   a. Infringed the rights of Plaintiffs in the Coachella Marks, which have been federally registered, in violation of 15 U.S.C. § 1114(1);

   b. Infringed the rights of Plaintiffs in the Coachella Marks in violation of 15 U.S.C. § 1125(a);

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

c. Created a false association with Plaintiffs and the Coachella Marks;

d. Engaged in unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.* and California common law; and

e. Engaged in untrue or misleading advertising in violation of California Business and Professions Code §§ 17500 *et seq.* and California common law.

2. That each of the above acts was willful.

3. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Walmart and its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Walmart, from:

a. Engaging in any activity that infringes Plaintiffs' trademark rights, including advertising, producing, promoting, marketing, selling and/or offering for sale any goods or services in connection with the Coachella Marks or any confusingly similar mark;

b. Engaging in any activity, including making any false or misleading statements regarding Coachella, including, but not limited to, those that would create any association between Coachella and Walmart or its third-party vendors, or which implies any kind of endorsement or sponsorship, such as by using indicia of the Coachella Trade Dress, the Coachella Marks, or any of Coachella's copyrights, imagery, or artwork;

c. Engaging in any unfair competition with Plaintiffs;

d. Engaging in any deceptive acts, including untrue, false, or misleading advertising; and

e. Receiving any compensation, whether in money, in kind, or otherwise, for any of the acts proscribed in subparagraphs (a)-(d) above.

4. That Plaintiffs be awarded damages for Walmart's trademark infringement, false designation of origin, and unfair competition and that these damages be trebled due to Walmart's willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

5. That Plaintiffs be awarded all profits resulting from Walmart's infringement of Plaintiffs' rights and by means of Walmart's false representations and unfair competition with Plaintiffs.

6. That Plaintiffs be awarded the costs of any corrective advertising they undertake to dispel any confusion or false association created by Walmart's unlawful acts.

7. That Walmart be ordered to account for and disgorge to Plaintiffs all amounts by which Walmart has been unjustly enriched by reason of Walmart's unlawful actions.

8. That Plaintiffs be awarded exemplary and/or punitive damages by reason of Walmart's unlawful actions.

9. That Plaintiffs be awarded pre- and post-judgment interest on all damages.

10. That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, California law, and any other applicable provision of law.

11. That the Court award Plaintiffs their costs of suit incurred herein.

12. That the Court order such other or further relief as the Court may deem just and proper.

DATED: November 24, 2026

Tucker Ellis LLP

By: /s/ David J. Steele
David J. Steele
Attorneys for Plaintiffs
COACHELLA MUSIC FESTIVAL, LLC
and GOLDENVOICE, LLC

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

## DEMAND FOR TRIAL BY JURY

Plaintiffs Coachella Music Festival, LLC and Goldenvoice, LLC hereby demand a trial by jury on all issues so triable.

DATED: November 24, 2026

Tucker Ellis LLP

By: /s/ David J. Steele
David J. Steele
Attorneys for Plaintiffs
COACHELLA MUSIC FESTIVAL, LLC
and GOLDENVOICE, LLC